**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**Case Number: 1:20-cv-23463-MGC**
**Magistrate Judge: Jonathan Goodman**

|  |  |
|---|---|
|  | ) |
|  | ) |
| MARIA PEREZ-SERA, | ) |
|  | ) |
|     Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| CARNIVAL CORPORATION, a Panamanian | ) |
| Corporation, the owner and operator of the | ) |
| Trademark CARNIVAL CRUISE LINE, | ) |
|  | ) |
|     Defendant. | ) |

**AMENDED COMPLAINT[1]**

Plaintiff Maria Perez-Sera hereby files this Amended Complaint against Defendant Carnival Corporation, a Panamanian Corporation that is the owner and operator of Carnival Cruise Line, a registered Trademark, for the reasons set forth below.

**JURISDICTION, PARTIES & VENUE**

1. This is an action for damages that exceed Seventy-Five Thousand ($75,000.00) Dollars.

2. Jurisdiction of this Court is invoked pursuant to 28. U.S.C. § 1333 as the district courts have original jurisdiction over any civil case of admiralty or maritime jurisdiction, saving to suitors

---

[1] Plaintiff's initial complaint (ECF No. 1) was incorrectly captioned as a "First Amended Complaint." The instant complaint – Plaintiff's first amendment – is being filed as a matter of course within 21 days after service of a motion made under Rule 12(b). *See* Fed. R. Civ. Pro. 15(a)(1)(B).

1

in all cases all other remedies to which they are entitled.  *See also* Federal Rule of Civil Procedure 9(h); *DeRoy v. Carnival*, 963 F.3d 1302, 1309 (11th Cir. 2020).

3.   Accordingly, the Saving-to-Suitors clause of § 1333 guarantees Ms. Perez-Sera the right to a jury trial under the Florida constitution.

4.   At all times relevant, Ms. Perez-Sera has been a resident and citizen of the State of Florida.

5.   At all times relevant, Defendant Carnival Corporation, a Panamanian corporation, has been a foreign corporation that sets sail out of various ports in Florida, including Miami-Dade County, and has its world-wide headquarters and nerve-center in Miami-Dade County.

6.   This court has personal jurisdiction over Defendant Carnival Corporation because it is headquartered in Florida and conducts substantial business activities out of Miami-Dade County, Florida where this district court is located, in one or more of the following ways:

a.   Operating, conducting, engaging in or carrying on a business venture in this state and/or county; and/or

b.   Having an office or agency in this state and/or county; and/or

c.   Engaging in substantial activity within this state; and/or

d.   Committing one or more of the acts stated in Florida Statutes, Sections 48. 081, 48. 181 or 48. 193; and/or

e.   By requiring a forum selection clause in its passenger ticket that requires the Plaintiff to sue in the United States District Court for the Southern District of Florida, Defendant Carnival Corporation has implicitly agreed to submit itself to the jurisdiction of this Court.

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

7.  Under 28 U.S.C. § 1391, venue is proper in the United States District Court for the Southern District of Florida.  This Defendant also has expressly agreed to venue in this Court by requiring that as a term in its passenger ticket.

8.  At all times relevant, Carnival Corporation has been the owner of "Carnival Cruise Line," a Trademark registered with the State of Florida under Document Number T17000000819, to operate passenger cruise ships and numerous specifically identified activities incidental to or in furtherance of such operation.

9.  At all times relevant, Carnival Cruise Line, the Trademark owned by Carnival Corporation, was the registered owner and operator of the passenger cruise ship, *Carnival Horizon*, which is flagged out of the Bahamas.  Thus, at all times relevant Defendant Carnival Corporation owned and/or operated the cruise ship on which the subject tort occurred.

10. At all times relevant, Defendant Carnival was the employer of certain healthcare providers, including but not limited to "Dr. Kenyo" and "Dr. Claudia,"[2] as well as Nurses Xavier Rosales and Michelle Paz, who provided medical care to the ship's crew and passengers aboard the *Carnival Horizon*.

11. At all times relevant, Carnival Corporation acted through its employees, agents, apparent agents, servants, officers, or representatives – including but not limited to those responsible for creating and enforcing policies and procedures related to onboard scooter use; and healthcare

---

[2] The medical records provided read "Dr. Claudia" and "Gonzalez Chagin, Claudia Patricia MD" so it is presumed the correct individual is "Dr. Gonzalez Chagin" whose given names are "Claudia Patricia," and whose Treating Doctor ID Number is 509452, although it may be that "Gonzalez Chagin" and "Claudia Patricia" are different people. As such, Plaintiff alleges the name(s) both ways for clarity and in an abundance of caution.  To be consistent with the records, Plaintiff will use "Dr. Claudia" to refer to the person believed to be Dr. Claudia Patricia Gonzalez Chagin throughout.

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

providers Dr. Kenyo, Dr. Claudia, Nurse Xavier Rosales, and Nurse Michelle Paz – who were acting within the course of their employment, agency, apparent agency, servitude, office, or representative capacity, or under Carnival Corporation's control, and in furtherance of its interests, thereby making Defendant Carnival Corporation vicariously liable for their acts or omissions.

12.  Carnival Corporation, Inc.  and its registered trademark, Carnival Cruise Line, will be referred to as "Carnival" throughout this complaint.

13. The claims sued upon include negligence, brought at law and *in personam*, and includes claims under general maritime law.  *See, e.g., Am. Ins. Co. v. 365 Bales of Cotton*, 26 U.S. 511, 545-46 (1828).

14.  All conditions precedent to bringing this action have been performed, waived, or otherwise satisfied.

## FACTS COMMON TO ALL COUNTS
### The Incident in Question

15. On or about August 24, 2019, Plaintiff Maria Perez-Sera was a passenger on the *Carnival Horizon*, which had set sail out of Miami, Florida for a nine-day cruise.  *See* Carnival Cruise Ticket attached hereto as Exhibit A.

16. At all times relevant, Ms. Perez-Sera was a paying passenger on the subject cruise ship and therefore a business invitee while aboard the vessel.

17. On August 24th, at approximately 8:20 p.m., Ms. Perez-Sera was severely injured outside the casino gift shop when a passenger drove an electric scooter into Ms. Perez-Sera and knocked her down.

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

18. Ms. Perez-Sera was taken to the ship's infirmary by wheelchair immediately after being injured.  X-rays were taken and she was told by the ship's healthcare personnel that her injuries were "superficial" and there were no fractures in either leg.

19. Contrary to what she was told, and what the doctor documented in her medical records, Ms. Perez-Sera in fact had fractures in both legs and should have been advised to remain completely non-weightbearing to avoid exacerbating the injuries until she could be evaluated by an orthopedic specialist.

20. Ms. Perez-Sera was unable to walk because of pain while at and when she left the clinic, so she was given anti-inflammatories and a wheelchair for the remainder of the cruise.

21. The wheelchair would not go through the door of her cabin, and she was not offered a wheelchair accessible cabin.  She had to bear weight to get in and out of her cabin each time, thus unavoidably exacerbating the injuries, and she had to use public, handicap accessible restrooms for her toileting needs.

22. When the pain persisted and Ms. Perez-Sera returned to the infirmary, she was told that she may have a hair-line fracture.

23. The ship's physician did not, as she should have done, immediately transfer Ms. Perez-Sera to a shoreside hospital for evaluation, or medically order that Carnival provide Ms. Perez-Sera with a handicap accessible cabin so that she could be non-weightbearing for the remainder of the cruise.  Nor did the physician advise Ms. Perez-Sera of the importance of remaining completely non-weightbearing on her injuries.

24. After disembarking at the end of the cruise, Ms. Perez-Sera received care in Miami and was finally advised of the true nature of her injuries.  She had suffered a fracture of the right tibia and a fracture of the left ankle.

5

25. The right tibial fracture required surgery with a plate and pins.  The surgery was performed at Doctors Hospital on September 3, 2019, after which she was released to West Gables Rehab where she remained for an extensive period.  Ms. Perez-Sera is still unable to walk.

26.   Ms. Perez-Sera has since undergone significant care for her leg.  She has a permanent loss of function, physical pain and suffering, and significant emotional distress.

27. These injuries and losses are permanent and continuing in nature, and were directly and proximately caused by this Defendant's negligence.

28. On February 19, 2020, Ms. Perez-Sera notified Defendant in writing of the full particulars of the claim.

<strong>The Ship</strong>

29. Before the incident in question, Carnival custom built the *Carnival Horizon,* and all *Vista*-class Carnival cruise ships, in a shipyard in Italy.  Carnival had the *Carnival Horizon* custom built to specifications and designs which were made by or under the supervision and participation of Carnival.  *Carnival Horizon* was designed by or at the direction of Carnival's shoreside New Build and other shoreside departments.  Carnival employs architects, naval designers, and marine engineers.

30. The *Carnival Horizon* is a part of the *Vista* Class which includes the *Carnival Vista, Carnival Panorama*.  Carnival has operated and maintained the other ships in *Vista* class, listed above, continuously since the time when each of those ships were first built and put into service until the filing of Plaintiff's complaint.

31. Carnival also custom built to specifications and designs which were made by or under the supervision and participation of Carnival all of the *Vista* class ships, listed above.  The design

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

and construction of these ships was under the supervision and with the participation of Carnival personnel who were stationed on-site in the shipyard during construction.

32. The *Carnival Horizon* was delivered to Carnival as finished in March 2018 and took her maiden voyage in April 2018.  Carnival has operated and maintained the ship continuously since that time.

33. Carnival has been responsible for ensuring that the travel areas assigned for pedestrian travel were safe from use by operators of motorized scooters.  This includes controlling the width of the travel areas, the location of the travel areas, and the ability to restrict access to motorized scooters on pedestrian walkways for individuals who have not demonstrated a proficiency in their use.

34. Carnival allowed third-party vendors to supply these motorized scooters to passengers aboard its vessels, and its website directed the prospective passengers to these specific third-party vendors to acquire the motorized scooters and have them delivered directly to the vessel ready for use on Carnival cruises.

35. Carnival also allowed passengers to bring privately owned or rented motorized scooters on board.

36. Defendant failed to provide designated areas or paths for operation of the motorized scooters and instead allowed them to operate freely within and commingle among pedestrian traffic on the ship.

37. The Defendant knew or should have known that allowing individuals to operate motorized scooters in the same areas as pedestrians, where pedestrians could not move out of the way on either side and would not be able to predict from which direction a scooter might be

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

coming, created a dangerous condition for pedestrians in the vicinity and path of these motorized scooters.

38. The Defendant knew or should have known that, allowing third-party vendors to deliver electric-powered motorized scooters to the *Horizon* vessel without ensuring that the vendors had provided the prospective end-user of the motorized equipment thorough and complete instruction in its use, including but not limited to: owner's manuals, other written instructional materials, multimedia or other electronic format instructional materials, phone-based usage training and guidance, and/or in-person usage training and guidance, created a dangerous condition for pedestrians who might come into contact with these motorized scooters being operated by other people.

39. The Defendant knew or should have known that, allowing third-party vendors to deliver electric-powered motorized wheelchairs to its *Horizon* vessel and failing itself to ensure that Carnival staff, personnel, employees and agents have provided the prospective end-user of the motorized scooters thorough and complete instruction in its use, including but not limited to: owner's manuals, other written instructional materials, multimedia or other electronic format instructional materials, phone-based usage training and guidance, and/or in-person usage training and guidance, created a dangerous condition for pedestrians who might come into contact with these motorized scooters being operated by other people.

40. Defendant knew or should have known that allowing individuals to operate motorized scooters aboard the ship, in and among pedestrian traffic with no designated travel lanes or directions of travel, without having been required to demonstrate a proficiency in the operation of the motorized scooters, created a dangerous condition for pedestrians who might come into contact with these motorized scooters being operated by other people.

8

41. Defendant had actual knowledge of the dangerous condition and/or had constructive knowledge of the dangerous condition because it was created by Carnival's decision to allow these motorized scooters to be brought on board and operated on board by individuals who may not have had any prior training or experience in operating such motorized machinery and who were allowed to operate the motorized machinery freely within known pedestrian traffic areas where other passengers – including children and the elderly – foreseeably would come into contact with these motorized scooters and be subjected to injury by the dangerous conditions they created.

42. Carnival had constructive knowledge of the dangerous condition by, among other things, (a) the length of time the dangerous condition existed; (b) the nature of the dangerous condition— including that the condition (allowing untrained or untested individuals to operated motorized machinery freely among pedestrians) which posed the risk that pedestrians would get hit or run over by these motorized scooters onboard *Carnival Horizon*—was unreasonably dangerous in violation of industry standards, regulations, and codes, and was apparent to any of Carnival's personnel who saw these motorized scooters operated among pedestrian traffic daily on numerous cruises, but was not readily apparent to Ms. Perez-Sera; and/or (c) the fact that the normal sensation of a cruise ship at sea can cause the operator of the motor scooter to feel imbalanced or differently balanced from the feeling of operating the scooter on dry land; and/or (d) the fact that the dangerous condition, a similar dangerous condition, or the cause of the dangerous condition was repetitive, continuous, ongoing, recurring, or occurring with some regularity onboard the *Horizon* and other Carnival ships.  Thus the dangerous condition was reasonably foreseeable and in the exercise of reasonable care the Defendant should have discovered it and/or known about it, and so should have protected passengers against the dangerous condition that posed the hazard by removing it, and should have warned them so that they could take steps to protect themselves.

9

43. In the alternative, Defendant created the dangerous condition through its active corporate negligence and so notice is not required.

## COUNT 1
## CLAIM FOR NEGLIGENCE

44. Plaintiff adopts and re-alleges paragraphs one through forty-three (1-43) as if fully set forth herein.

45. Defendant Carnival owes a "duty to exercise reasonable care for the safety of its passengers," including Maria Perez-Sera. *Hall v. Carnival*, 888 So. 2d 654 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances. *Carroll v. Carnival Cruise Lines, Inc.*, 955 F.3d 1260, 1264 (11th Cir. 2020). This duty includes imposing liability on a cruise line for maintaining a dangerous condition on one of its ships, even if the danger is open and obvious. *Carroll*, 955 F.3d at 1269.

46. Defendant Carnival, by and through its agents, apparent agents, employees, servants, representatives, and contractors, had undertaken a duty to provide Ms. Perez-Sera with a safe ship, reasonably fit for its intended purpose, that did not pose her any unreasonable risk of harm. That includes the duty to design and maintain the ship—specifically including pedestrian walkways, areas of travel, and designated paths of travel and enforcing safety rules to keep these areas safe at all times—in a safe condition so that they did not pose, or expose Ms. Perez-Sera to, unreasonable risk.

47. Carnival owes a duty as a common carrier to its passengers to maintain the ship, pedestrian walkways, areas of travel, and designated paths of travel, in a safe condition. Carnival owes a duty of reasonable care under the circumstances, which are that Carnival owns and/or manages more than twenty (20) cruise ships, including the *Carnival Horizon*, that regularly operate

10

at sea with thousands of passengers and personnel on each cruise.  Carnival knows or should know of the need to provide safe, designated walking areas for pedestrians that were separate from and/or protected by barriers from the travel areas provided for operators of motorized machinery so as to not to pose unreasonable risk of harm to passengers, including Ms. Perez-Sera.

48. In the alternative, notice to the Defendant is not required because the Defendant (a) engaged in and was guilty of negligent design and maintenance; and/or (b) engaged in policy making decisions at the corporate level that allowed the condition to occur and exist; and/or (c) through its own acts and/or omissions caused the dangerous conditions to come about or exacerbated the dangerous conditions.  Therefore, no notice to the Defendant is required.

49. Carnival at all relevant times was under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty.

50. Carnival at all relevant times was under a legal duty to comply with industry safety standards that are promulgated by the International Maritime Organization (IMO), the U. S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International.

51. Notwithstanding the duties owed and/or undertaken by Defendant, it breached its duty to Ms. Perez-Sera to maintain the ship, including pedestrian walkways or areas of travel on the *Carnival Horizon*, in a safe condition including through one or more of the following ways:

   a.  By negligently and carelessly failing to use reasonable care;

   b.  By negligently and carelessly failing to require, as part of the design of its ship which it knew would include both pedestrians and individuals on motorized scooters, travel paths that were safe for use by pedestrians and motorized scooters

11

because they were sufficiently wide to allow pedestrians and scooter operators to co-exist without risk of coming into contact;

c. By negligently and carelessly failing to require, as part of the design of its ship which it knew would include both pedestrians and individuals on motorized scooters, travel paths that were safe for use by pedestrians and motorized scooters because they were separated by clear signage;

d. By negligently and carelessly failing to require, as part of the design of its ship which it knew would include both pedestrians and individuals on motorized scooters, travel paths that were safe for use by pedestrians and motorized scooters because they were separated by physical barriers;

e. By negligently and carelessly failing to consider, analyze, or anticipate the need for on-site modification to the ship, after it was received and the corporate decision to allow motorized scooters onboard in pedestrian areas was made, to ensure that all travel paths were safe for use by pedestrians and motorized scooters, including but not limited to separating the travel areas by signage, by physical barriers, and/or by training and instruction.

f. By negligently and carelessly failing to consider, analyze, or anticipate the need for adequate instruction and training, both to the prospective scooter operators and to its own staff, personnel, employees and agents, on the use of onboard electric-powered motorized scooter machinery so as to prevent accidents and injuries to pedestrians who might come into contact with others operating these motorized machines;

g. By negligently and carelessly allowing passengers to operate motorized machine in pedestrian areas onboard without first providing thorough and complete instruction and training in the machine's use, including but not limited to: owner's manuals, other written materials, multimedia or other electronic format materials, phone-based usage training and guidance, and/or in-person usage training and guidance;

h. By negligently and carelessly allowing passengers to operate motorized machine in pedestrian areas onboard without first ensuring that Carnival *Horizon*'s staff, personnel, employees and agents have been provided with thorough and complete instruction and training in the machine's use, including but not limited to: owner's manuals, other written materials, multimedia or other electronic format materials, phone-based usage training and guidance, and/or in-person usage training and guidance;

i. By negligently and carelessly allowing passengers to operate motorized machine in pedestrian areas onboard without first requiring the prospective operators to

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

demonstrate proficiency in the operation of the machinery, including in tight quarters and under circumstances that simulate congested pedestrian walkways;

j.  By negligently and carelessly failing to create appropriate protocols and procedures to ensure that all pedestrian travel paths were safe for use by pedestrians;

k.  By negligently and carelessly failing to create appropriate protocols and procedures to ensure that all pedestrian travel paths remain safe for use by pedestrians even if motorized scooters are allowed to be operated in the same vicinity;

l.  By negligently and carelessly failing to enforce appropriate protocols and procedures to ensure that all pedestrian travel paths were safe for use by pedestrians;

m.  By negligently and carelessly failing to enforce appropriate protocols and procedures to ensure that all pedestrian travel paths remain safe for use by pedestrians even if motorized scooters are allowed to be operated in the same vicinity;

n.  By negligently and carelessly failing to require all motorized scooters brought on board the ship to have warning sounds to alert persons in the vicinity as the motorized scooter approached;

o.  By negligently and carelessly failing to inspect all motorized scooters brought on board the ship to ensure that they had operational warning sounds to alert persons in the vicinity as the motorized scooter approached; and

p.  By negligently and carelessly failing to ensure that all motorized scooters brought on board the ship had operational warning sounds to alert persons in the vicinity as the motorized scooter approached.

52. Carnival also failed to comply with applicable industry standards, statutes, and/or regulations, which invokes the Pennsylvania Rule, and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence.

53. Carnival's negligence, and failures described more fully above, proximately caused or substantially contributed to causing Ms. Perez-Sera's injuries.  Had Carnival properly maintained the ship, including the pedestrian walkways, in a safe condition, Ms. Perez-Sera would not have had been run over by another passenger who was operating a motorized scooter in a pedestrian

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

travel way onboard the *Carnival Horizon* with the full consent and permission of Carnival and its personnel.

54. Carnival's negligence directly and proximately caused permanent injuries and damages to Maria Perez-Sera in the past, and will continue to do so in the future. Ms. Perez-Sera has in the past suffered and will in the future continue to suffer bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, rehabilitation, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a pre-existing condition. These losses are permanent and continuing in nature and Ms. Perez-Sera will continue to suffer these losses in the future. Her special damages include the loss of the price of the cruise that she was unable to enjoy or participate in because of her injuries.

WHEREFORE, Plaintiff, Maria Perez-Sera, demands Judgment against Defendant Carnival for damages recoverable under the general maritime law and state law including but not limited to compensatory damages, costs of this action, post-judgment interest, and further demands trial by jury of all issues so triable as a matter of right under the Florida Constitution and Florida state case law, and such further relief as this Court deems just and proper.

## COUNT 2
## CLAIM FOR NEGLIGENT FAILURE TO WARN

55. Plaintiff adopts and re-alleges paragraphs one through forty-three (1-43) as if fully set forth herein.

56. Defendant Carnival owes a "duty to exercise reasonable care for the safety of its passengers," including Maria Perez-Sera. *See Hall v. Carnival*, 888 So. 2d 654 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, No. 87-2328-Civ, 1991 WL 329584, at *4 (S.D. Fla. Dec. 27, 1991).

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

57. The Defendant's "duty is to warn of dangers known to the carrier in places where the passenger is invited to or may reasonably be expected to visit." *Vierling v. Celebrity Cruises, Inc.,* 339 F. 3d 1309 (11th Cir. 2003) ("Courts sitting in admiralty have long recognized an obligation on the part of a carrier to furnish its passengers with a reasonably safe means of boarding and leaving the vessel, that this obligation is non-delegable, and that even the slightest negligence renders a carrier liable."); *see also Carlisle v. Ulysses Line Limited*, 475 So. 2d 248 (Fla. 3d DCA 1985).

58. Defendant Carnival owes a duty as a common carrier to its passengers to warn of dangers known to Carnival where Carnival invites or reasonably should expect passengers to go, including pedestrian walkways or paths across the ship. As a result, Carnival's duty of care included warning Ms. Perez-Sera and anyone who might come into contact with motorized scooters in a pedestrian walkway of the dangerous posed by the scooters and of the need to look in both directions for motorized scooters before stepping onto a pedestrian pathway or area.

59. A reasonable person who was not familiar with pedestrian walkway commingled with unregulated motorized scooters, and specifically with the fact that the permitted operators had received no training, instruction, or testing from Carnival before being allowed to operate these motorized machines in pedestrian walkways aboard the *Carnival Horizon*, would not be able to appreciate the dangers posed by the scooters and the lack of separation between pedestrians and scooters.

60. The unreasonably unsafe condition existed for a sufficient length of time that Defendant knew, or in the exercise of ordinary care should have known, of its existence and warned everyone in the zone of risk.

61. In the alternative, this same problem had occurred on this and other Carnival ships before and had resulted in injuries to other Carnival passengers before Ms. Perez-Sera was injured,

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

thereby placing this Defendant on notice of the foreseeable risk of serious bodily harm it posed if not corrected.

62. In the alternative, Defendant created the dangerous situation itself or actually knew of it yet failed to correct or warn about it, and thus notice is not required.

63. Moreover, Carnival at all relevant times was under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty.

64. Carnival at all relevant times was under a legal duty to comply with industry safety standards that are promulgated by the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International.

65. Notwithstanding the duties owed and/or undertaken by Defendant, it breached its duty to Ms. Maria Perez-Sera through one or more of the following ways:

    a. By negligently and carelessly failing to use reasonable care in warning passengers of dangers that would not be obvious to passengers before they were exposed;

    b. By negligently and carelessly failing to place signs, stickers, tape, or other visual or written notices on or near the pedestrian walkways onboard the *Carnival Horizon* so that passengers would be warned to look both ways for operators of motorized scooters and to be aware that they could approach from any direction without warning, thereby making the commingling of pedestrians and motorized scooters in the same open walkway a significant danger and creating a hazard that was not open and obvious to the passenger but was well-known to the shipowner and the cruising industry as a whole;

    c. By negligently failing to require that all motorized scooters and machinery operated onboard the *Carnival Horizon* have beeping or other sound alerts to warn people in the vicinity that the motorized scooter was present and/or approaching.

66. Carnival also failed to comply with applicable industry standards, statutes, and/or regulations, which invokes the Pennsylvania Rule, and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence.

67. Carnival's failure to warn Ms. Perez-Sera of the dangerous condition proximately caused or substantially contributed to causing Maria Perez-Sera's injuries. Had Carnival properly warned Ms. Perez-Sera of the hazards posed by the unregulated commingling of pedestrian and motorized traffic, she would have been aware of the dangerous condition and could have protected herself from coming into contact with the dangerous condition.

68. Carnival's failure to require that all motorized scooters be equipped with operational warning sounds as they approached pedestrians, including Ms. Perez-Sera, proximately caused or substantially contributed to causing Ms. Perez-Sera's injuries. Had Carnival properly required the machines to have sound to warn pedestrians, including Ms. Perez-Sera, of the hazards posed by the unregulated commingling of pedestrian and motorized traffic, she would have been aware of the dangerous condition and could have protected herself from coming into contact with the dangerous condition.

69. Carnival's negligence directly and proximately caused permanent injuries and damages to Maria Perez-Sera in the past, and will continue to do so in the future. Ms. Perez-Sera has in the past suffered and will in the future continue to suffer bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, rehabilitation, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a pre-existing condition. These losses are permanent and continuing in nature and Maria Perez-Sera will continue to suffer these losses in the future. Her special damages include the loss of the price of the cruise that she was unable to enjoy or participate in because of her injuries.

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

WHEREFORE, Plaintiff, Maria Perez-Sera, demands Judgment against Defendant Carnival for damages recoverable under the general maritime law and state law including but not limited to compensatory damages, costs of this action, post-judgment interest, and further demands trial by jury of all issues so triable as a matter of right under the Florida Constitution and Florida state case law, and such further relief as this Court deems just and proper.

**COUNT 3**
**CLAIM FOR NEGLIGENT TRAINING AND SUPERVISION OF PERSONNEL**

70. Plaintiff adopts and re-alleges paragraphs one through forty-three (1-43) as if fully set forth herein.

71. Defendant Carnival owes a "duty to exercise reasonable care for the safety of its passengers," including Maria Perez-Sera.  *See Hall v. Carnival*, 888 So. 2d 654 (Fla. 3d DCA 2004). The Defendant also owes a "duty to exercise reasonable care under the circumstances." *See Harnesk v. Carnival Cruise Lines, Inc.*, No. 87-2328-Civ, 1991 WL 329584, at \*4 (S.D. Fla. Dec. 27, 1991).

72. Defendant Carnival owes a duty as a common carrier to its passengers to properly and adequately train its crewmembers to inspect and ensure that all motorized machinery, including motorized scooters, that are brought onboard the *Horizon* for use in and around pedestrians is equipped with audible warnings sounds during approach; that the audible warning sounds are and remain operational; that the designated operator of the machinery has been trained in operating the motorized machinery, including its audible warning sounds, steering, and brakes; and that the designated operator of the machinery demonstrates proficiency in operating the motorized machinery, including its audible warning sounds, steering, and brakes.

73. Defendant Carnival owes a duty as a common carrier to its passengers to properly and adequately supervise its crewmembers and provide cross-checks to ensure that they inspect and

ensure that all motorized machinery, including motorized scooters, that are brought onboard the *Horizon* for use in and around pedestrians is equipped with audible warnings sounds during approach; that the audible warning sounds are and remain operational; that the designated operator of the machinery has been trained in operating the motorized machinery, including its audible warning sounds, steering, and brakes; and that the designated operator of the machinery demonstrates proficiency in operating the motorized machinery, including its audible warning sounds, steering, and brakes.

74. Moreover, Carnival at all relevant times was under a legal duty to comply with mandatory international vessel safety regulations that are promulgated by the International Maritime Organization (IMO) under authority expressly conferred by the U.S. Senate-ratified international Safety of Life at Sea (SOLAS) treaty.

75. Carnival at all relevant times was under a legal duty to comply with industry safety standards that are promulgated by the International Maritime Organization (IMO), the U.S. Coast Guard, the U.S. Access Board, and the American Society for Testing and Materials (ASTM) International.

76. Notwithstanding the duties owed and/or undertaken by Defendant, it breached its duty to Ms. Maria Perez-Sera to properly and adequately train and supervise its personnel as it relates to the dangers posed by the onboard operation of motorized scooters, including through one or more of the following ways:

   a. By negligently and carelessly failing to use reasonable care in training its personnel regarding hazards posed by motorized scooters being operated within the vicinity and without barrier from pedestrians;

   b. By negligently and carelessly failing to use reasonable care in supervising its personnel regarding removal of hazards posed by motorized scooters being operated within the vicinity and without barrier from pedestrians;

19

c.  By negligently and carelessly failing to properly and adequately train its crewmembers to inspect and ensure that all motorized machinery, including motorized scooters, that are brought onboard the *Horizon* for use in and around pedestrians is equipped with audible warnings sounds during approach;

d.  By negligently and carelessly failing to properly and adequately supervise its crewmembers to ensure they inspected and ensured that all motorized machinery, including motorized scooters, that are brought onboard the *Horizon* for use in and around pedestrians is equipped with audible warnings sounds during approach;

e.  By negligently and carelessly failing to properly and adequately train its crewmembers to inspect and ensure that the audible warning sounds are and remain operational on the motorized machinery that is operated onboard;

f.  By negligently and carelessly failing to properly and adequately supervise its crewmembers to inspect and ensure that the audible warning sounds are and remain operational on the motorized machinery that is operated onboard;

g.  By negligently and carelessly failing to properly and adequately train its crewmembers to ensure that the designated operator of the machinery has been trained in operating the motorized machinery, including its audible warning sounds, steering, and brakes;

h.  By negligently and carelessly failing to properly and adequately supervise its crewmembers to ensure that the designated operator of the machinery has been trained in operating the motorized machinery, including its audible warning sounds, steering, and brakes;

i.  By negligently and carelessly failing to properly and adequately train its crewmembers to test and ensure that the designated operator of the machinery demonstrates proficiency in operating the motorized machinery, including its audible warning sounds, steering, and brakes;

j.  By negligently and carelessly failing to properly and adequately supervise its crewmembers to test and ensure that the designated operator of the machinery demonstrates proficiency in operating the motorized machinery, including its audible warning sounds, steering, and brakes;

k.  By negligently and carelessly failing to train its crewmembers to place visual warnings so that passengers who might be using the pedestrian walkways and thus be in the vicinity of people operating motorized scooters were notified and reminded of the dangerous condition on board the *Carnival Horizon* and would know to avoid the hazard by looking both ways and in all directions for motorized scooters that needed to be avoided;

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

l.  By negligently and carelessly failing to supervise its crewmembers to ensure they placed visual warnings so that passengers who might be using the pedestrian walkways and thus be in the vicinity of people operating motorized scooters were notified and reminded of the dangerous condition on board the *Carnival Horizon* and would know to avoid the hazard by looking both ways and in all directions for motorized scooters that needed to be avoided;

m.  By negligently and carelessly failing to train its crewmembers to verbally warn passengers who might be using the pedestrian walkways and thus be in the vicinity of people operating motorized scooters of the dangerous condition on board the *Carnival Horizon* and would know to avoid the hazard by looking both ways and in all directions for motorized scooters that needed to be avoided; and

n.  By negligently and carelessly failing to supervise its crewmembers to ensure they verbally warned passengers who might be using the pedestrian walkways and thus be in the vicinity of people operating motorized scooters of the dangerous condition on board the *Carnival Horizon* and would know to avoid the hazard by looking both ways and in all directions for motorized scooters that needed to be avoided.

77. Carnival also failed to comply with applicable industry standards, statutes, and/or regulations, which invokes the Pennsylvania Rule, and shifts the burden of proof to the Defendant in the proof of negligence or proof of the absence of negligence.

78. Carnival's failure to properly and adequately train and supervise its personnel in the manners described above proximately caused or substantially contributed to causing Ms. Perez-Sera's injuries.  Had Carnival properly and adequately trained and/or supervised its personnel in the manner described above, Ms. Perez-Sera more likely than not would not have come in contact with the dangerous motorized scooter on August 24, 2019.

79. Carnival's negligence directly and proximately caused permanent injuries and damages to Maria Perez-Sera in the past, and will continue to do so in the future.  Ms. Perez-Sera has in the past suffered and will in the future continue to suffer bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, rehabilitation, medical and nursing care and treatment, loss of earnings, loss of ability to earn money,

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

and aggravation of a pre-existing condition.  These losses are permanent and continuing in nature and Ms. Perez-Sera will continue to suffer these losses in the future.  Her special damages include the loss of the price of the cruise that she was unable to enjoy or participate in because of her injuries.

WHEREFORE, Plaintiff, Maria Perez-Sera, demands Judgment against Defendant Carnival for damages recoverable under the general maritime law and state law including but not limited to compensatory damages, costs of this action, post-judgment interest, and further demands trial by jury of all issues so triable as a matter of right under the Florida Constitution and Florida state case law, and such further relief as this Court deems just and proper.

**COUNT 4**
**CLAIM FOR NEGLIGENT MEDICAL CARE AND**
**TREATMENT BY EMPLOYEES OR ACTUAL AGENTS**

80. Plaintiff adopts and re-alleges paragraphs one through forty-three (1-43) as if fully set forth herein.

81. The Defendant owed a duty to Maria Perez-Sera to provide prompt and appropriate medical care upon her presentation to the ship's infirmary on August 24, 2019 and thereafter up until she was disembarked and no longer under the care of Carnival's medical personnel.

82. Carnival, through its employees or direct agents, undertook a duty to provide proper care to Ms. Perez-Sera with that level of care, skill, and treatment that is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

83. Notwithstanding the duty undertaken by Defendant, it breached its duty to Ms. Perez-Sera by engaging in the following acts or omissions, all of which deviated from and fell below the accepted standards of medical care and treatment:

      a.   By negligently and carelessly failing to properly assess the condition of Ms. Perez-Sera;

22

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

b.  By negligently and carelessly failing to timely diagnose and appropriately treat Ms. Perez-Sera;

c.  By negligently and carelessly failing to provide proper care to Ms. Perez-Sera in that her health care providers did not meet the level of care, skill and treatment that is recognized as acceptable and appropriate by reasonably prudent similar health care providers;

d.  By negligently and carelessly failing to possess the requisite knowledge appropriate to practice critical care or emergent care;

e.  By negligently and carelessly failing to possess the requisite knowledge regarding appropriate measures to take in connection with Ms. Perez-Sera's care;

f.  By negligently and carelessly failing to perform appropriate physical examinations or diagnostic tests, or to order that such examinations or tests be performed;

g.  By negligently and carelessly failing to take action to timely evacuate Ms. Perez-Sera when it was medically inappropriate to fail to take action and at a time when it jeopardized the health, safety, and body of Ms. Perez-Sera;

h.  By negligently and carelessly failing to immobile Maria Perez-Sera or ensure that she remain completely non-weight bearing when it was medically inappropriate to fail to do so and at a time when it jeopardized the health, safety, and body of Ms. Perez-Sera;

i.  By negligently and carelessly failing to follow appropriate guidelines for someone of Ms. Perez-Sera's size who has suffered a fall that presented with such significant pain she could not tolerate the exam to her knee;

j.  By negligently and carelessly failing to notify Ms. Perez-Sera that she needed a surgical consult as quickly as possible;

k.  By negligently and carelessly misidentifying injuries as insufficient to require notification to the U.S. Coast Guard, which would have necessitated a more thorough investigation into the mechanism of injury and ensure more detail was paid to Ms. Perez-Sera's physician condition;

l.  By negligently and carelessly failing to adequately warn Ms. Perez-Sera of the need that she remain completely non-weight bearing until she could receive a surgical consult;

m.  By negligently and carelessly failing to examine and/or monitor Ms. Perez-Sera so that her knee, tibia, and ankle would not be medically compromised;

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

n. By negligently and carelessly failing to provide adequate care to Ms. Perez-Sera;

o. By negligently and carelessly failing to use reasonable care in the provision of medical care to Maria Perez-Sera;

p. By negligently and carelessly failing to request consultation with appropriate medical specialists shoreside, including by telemedicine, who would have prescribed, ordered, and/or recommended Ms. Perez-Sera be disembarked at the first available port with appropriate medical facilities or an airport capable of providing prompt transportation home;

q. By negligently and carelessly failing to properly diagnose, treat, and care for Maria Perez-Sera;

r. By negligently and carelessly failing to order appropriate, safe, and reasonable accommodations for Ms. Perez-Sera and that she be moved into a wheelchair accessible cabin that would allow her to remain fully and completely non-weightbearing; and

s. By negligently and carelessly failing to invoke the chain of command to secure appropriate, safe, and reasonable accommodations for Maria Perez-Sera, to move her into a wheelchair accessible cabin that would allow her to remain fully and completely non-weightbearing.

84. Carnival acknowledged through its hiring and holding out of its medical personnel, including "Dr. Claudia," "Dr. Kenyo," and all nurses, that they acted for Carnival while administering care to passengers aboard *Carnival Horizon*. Dr. Claudia, Dr. Kenyo, Nurse Rosales and Nurse Paz manifested the acceptance of that undertaking by providing care to Carnival's passengers, in Carnival's medical center, onboard Carnival's vessel, and Carnival controlled or had the right to control the medical personnel's actions, including but not limited to responding to or vetoing a request for a change of cabin to wheelchair accessible for a patient for medical reasons.

85. Carnival directly paid the medical personnel for their work in the ship's medical center.

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

86. The medical center was designed, created, owned, operated, and maintained by Carnival.

87. Carnival had the right to fire its medical personnel, including "Dr. Claudia," Nurse Rosales, and Nurse Paz.

88. The negligence of these Carnival healthcare providers directly and proximately caused permanent injuries and damages to Ms. Perez-Sera in the past, and will continue to do so in the future. Ms. Perez-Sera has in the past suffered and will in the future continue to suffer bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, rehabilitation, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a pre-existing condition. These losses are permanent and continuing in nature and Maria Perez-Sera will continue to suffer these losses in the future. Her special damages include the loss of the price of the cruise that she was unable to enjoy or participate in because of her injuries.

WHEREFORE, Plaintiff, Maria Perez-Sera, demands Judgment against Defendant Carnival for damages recoverable under the general maritime law and state law including but not limited to compensatory damages, costs of this action, post-judgment interest, and further demands trial by jury of all issues so triable as a matter of right under the Florida Constitution and Florida state case law, and such further relief as this Court deems just and proper.

## COUNT 5
## NEGLIGENCE FOR VICARIOUS LIABILITY BASED UPON APPARENT AGENCY

89. Plaintiff Maria Perez-Sera adopts and re-alleges wparagraphs one through forty-three (1-43) as if fully set forth herein.

25

90. The Defendant owed a duty to Maria Perez-Sera to provide prompt and appropriate medical care upon her presentation to the ship's infirmary on August 24, 2019 and thereafter up until she was disembarked and no longer under the care of Carnival's medical personnel.

91. Carnival, through its employees or direct agents, undertook a duty to provide proper care to Ms. Perez-Sera with that level of care, skill, and treatment that is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

92. Notwithstanding the duty undertaken by Defendant, it breached its duty to Ms. Perez-Sera by engaging in the following acts or omissions, all of which deviated from and fell below the accepted standards of medical care and treatment:

   a. By negligently and carelessly failing to timely diagnose and appropriately treat Ms. Perez-Sera;

   b. By negligently and carelessly failing to provide proper care to Ms. Perez-Sera in that her health care providers did not meet the level of care, skill and treatment that is recognized as acceptable and appropriate by reasonably prudent similar health care providers;

   c. By negligently and carelessly failing to possess the requisite knowledge appropriate to practice critical care or emergent care;

   d. By negligently and carelessly failing to possess the requisite knowledge regarding appropriate measures to take in connection with Maria Perez-Sera's care;

   e. By negligently and carelessly failing to perform appropriate physical examinations or diagnostic tests, or to order that such examinations or tests be performed;

   f. By negligently and carelessly failing to take action to timely evacuate Ms. Perez-Sera when it was medically inappropriate to fail to take action and at a time when it jeopardized the health, safety, and body of Ms. Perez-Sera;

   g. By negligently and carelessly failing to immobile Maria Perez-Sera or ensure that she remain completely non-weight bearing when it was medically inappropriate to fail to do so and at a time when it jeopardized the health, safety, and body of Ms. Perez-Sera;

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

h. By negligently and carelessly failing to follow appropriate guidelines for someone of Ms. Perez-Sera's size who has suffered a fall that presented with such significant pain she could not tolerate the exam to her knee;

i. By negligently and carelessly failing to notify Ms. Perez-Sera that she needed a surgical consult as quickly as possible;

j. By negligently and carelessly misidentifying injuries as insufficient to require notification to the U.S. Coast Guard, which would have necessitated a more thorough investigation into the mechanism of injury and ensure more detail was paid to Ms. Perez-Sera's physician condition;

k. By negligently and carelessly failing to adequately warn Ms. Perez-Sera of the need that she remain completely non-weight bearing until she could receive a surgical consult;

l. By negligently and carelessly failing to examine and/or monitor Ms. Perez-Sera so that her knee, tibia, and ankle would not be medically compromised;

m. By negligently and carelessly failing to provide adequate care to Ms. Perez-Sera;

n. By negligently and carelessly failing to use reasonable care in the provision of medical care to Ms. Perez-Sera;

o. By negligently and carelessly failing to request consultation with appropriate medical specialists shoreside, including by telemedicine, who would have prescribed, ordered, and/or recommended Ms. Perez-Sera be disembarked at the first available port with appropriate medical facilities or an airport capable of providing prompt transportation home;

p. By negligently and carelessly failing to properly diagnose, treat, and care for Ms. Perez-Sera;

q. By negligently and carelessly failing to order appropriate, safe, and reasonable accommodations for Ms. Perez-Sera and that she be moved into a wheelchair accessible cabin that would allow her to remain fully and completely non-weightbearing; and

r. By negligently and carelessly failing to invoke the chain of command to secure appropriate, safe, and reasonable accommodations for Ms. Perez-Sera, to move her into a wheelchair accessible cabin that would allow her to remain fully and completely non-weightbearing.

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

93. At all times relevant, Defendant Carnival held out its medical staff, including its doctors and nurses, as its apparent agents who work in Carnival's "medical centers" on the vessel. The Defendant, Carnival, promotes its medical staff and represents them as being their apparent agents through brochures, internet advertising, and communications to passengers on the vessel. Carnival held out its staff, including Dr. Claudia, Dr. Kenyo, Nurse Rosales, and Nurse Paz as being its direct employees or its actual agents.

94. Carnival promotes the idea that the medical staff who work in its "medical centers" are its apparent agents as part of a marketing tool to induce passengers such as the Plaintiff to cruise on its ships.

95. Defendant Carnival manifested to Plaintiff that its medical staff, including Dr. Claudia, Dr. Kenyo, Nurse Rosales, and Nurse Paz, were acting as its apparent agents in various ways, including but not limited to the following:

a. The doctor and nurse both worked at what the Defendant describes in its advertising as its "medical centers";

b. The "medical centers" are owned and operated by Carnival, which pays to stock the "medical centers" with all supplies, various medicines and equipment;

c. The passenger is billed directly by Carnival through the passengers' Sail & Sign Card, whereas the "medical staff', including the doctor and nurse, are paid salaries by Carnival, to work in the "medical centers";

d. The doctors are required to attend staff meetings with the Captain and other officers; and

e. that Carnival has the right to hire and fire the physicians and nurses, including Dr. Claudia and Dr. Kenyo.

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

96. The medical staff in this case, including Dr. Claudia, Dr. Kenyo, Nurse Rosales, and Nurse Paz, were required by Carnival to wear Carnival uniforms which included name tags, and which displayed the Carnival name and logo.

97. Further, the cruise line holds out the ship's physicians and medical staff as the apparent agents of the cruise line.  The Defendant through its actions and conduct represents to its cruise passengers, including but not limited to the Plaintiff herein and her family, that the shipboard physicians and medical staff work for the benefit of the Defendant.  These actions and conduct of the cruise-line include but are not limited to the following:

   a. The Defendant controls cruise line physicians' attire, which includes, at times, a uniform with epaulettes and stripes similar to other crewmembers;

   b. The Defendant cruise line offers physicians benefits including senior officer status, round-trip transportation from residence to the ship, uniforms, meals, private furnished cabins with refrigerators, telephones, computers with internet access, daily housekeeping services, and indemnification and health care;

   c. The Defendant cruise line requires that the ship's physicians sail with the ship;

   d. The Defendant cruise line provides the onboard Medical Center, including all of its supplies, equipment, and personnel;

   e. The Defendant cruise line allows and requires the ship's physicians to operate and provide services out of the ship's Medical Center which is provided by the cruise line and which is equipped by the cruise line;

   f. The Defendant cruise line does not permit the ship's physicians to operate and provide services out of the ship's Medical Center to private pay or personal patients

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

who would not be billed through Carnival with Carnival receiving all or a portion of the fee;

g.  The Defendant cruise line charges the services of the medical center, which includes services of the ship's doctors and other medical staff and charges for the medical equipment and goods provided by the cruise line, to the passenger's onboard Sign & Sail Account;

h.  The ship's physicians represented themselves to passengers that they are employees of Defendant Carnival;

i.  The Defendant cruise line limits the hours and area of the ship where passengers can receive medical services to the ship's Medical Center, which is staffed exclusively by shipboard medical personnel;

j.  The Defendant publishes the Medical Center's daily office hours in its flyer distributed to all passengers aboard its ships;

k.  The Defendant cruise line requires the shipboard physicians and medical staff to be on call 24 hours to attend to passenger medical emergencies;

l.  The Defendant cruise line requires all shipboard medical personnel to create medical records for the care of passengers in the shipboard electronic medical records system, for which each provider has a separate login, password, and access, and over which the Defendant cruise line maintains possession, custody, and exclusive control once they are created.

98. The ship's physician is considered to be an Officer on board the vessel and a member of the crew, and was introduced to the passengers as one of the ship's Officers.

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

99. Both the ship's doctor and the nurses were held out to the passengers by Carnival as members of the ship's crew.

100.    The Defendant put the ship's physician and nurse under the command of the ship's superior officers, including the Master of the ship.

101.    The cruise line represents to immigration authorities that the physician and nurse are members of the ship's crew.

102.    Both the ship's doctor and nurses are permitted to eat with the ship's crew and to use the exercise facilities that are designated for the ship's crew.

103.    The ship's physician and nurse provide services in the ship's "medical centers" and the Plaintiff had no alternative to going to the ship's medical center to be seen for her injury while onboard Defendant's vessel.

104.    At the time of Plaintiff's injury, she was seen, examined and treated by the ship's nurse and/or physician, in the ship's medical center, onboard the ship owned by Defendant Carnival, and was billed for this care by Carnival.

105.    She was taken to the ship's medical center in a wheelchair by shipboard personnel who responded to her being knocked down by a fellow passenger who was operating a motorized scooter.

106.    Based on the foregoing, the Plaintiff reasonably believed that the ship's nurse and doctor were acting as direct employees or actual agents on behalf of the Defendants, and was never given any reason to believe otherwise.

107.    Ms. Perez-Sera relied to her detriment on her belief that the physician and nurse were direct employees or actual agents of the Defendant in that Ms. Perez-Sera followed the advice of Carnival's nurse and/or physician and did not seek any further medical testing or evaluation

31

through telemedicine or a shoreside call, and by not requesting an emergent evacuation or to disembark at the first port of call so she could be seen in an appropriate medical facility there or return immediately to Miami to be seen in an appropriate medical facility. Ms. Perez-Sera would not have followed the advice of the ship's medical personnel had she suspected they were not the agents of Carnival.

108. As a result of the Plaintiff's reliance upon the ship's medical staff, Ms. Perez-Sera was not properly treated which more likely than not exacerbated the injury and reduced the likelihood of a successful outcome because she was not advised of the importance of remaining 100 percent non-weightbearing, nor was she given medical orders from the ship's physician to assist her in securing a wheelchair accessible cabin so that she could remain 100 percent non-weightbearing.

109. Defendant Carnival is liable to the Plaintiff for any and all damages as a result of negligent medical care by the physician and/or nurse under the theory of apparent agency.

110. The negligence of these Carnival healthcare providers directly and proximately caused permanent injuries and damages to Ms. Perez-Sera in the past, and will continue to do so in the future. Ms. Perez-Sera has in the past suffered and will in the future continue to suffer bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, rehabilitation, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a pre-existing condition. These losses are permanent and continuing in nature and Ms. Perez-Sera will continue to suffer these losses in the future. Her special damages include the loss of the price of the cruise that she was unable to enjoy or participate in because of her injuries.

Colson Hicks Eidson
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

WHEREFORE, Plaintiff, Maria Perez-Sera, demands Judgment against Defendant Carnival for damages recoverable under the general maritime law and state law including but not limited to compensatory damages, costs of this action, post-judgment interest, and further demands trial by jury of all issues so triable as a matter of right under the Florida Constitution and Florida state case law, and such further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury of all issues so triable as a matter of right.

Dated October 27, 2020.

> COLSON HICKS EIDSON
> Attorneys for Plaintiff
> 255 Alhambra Circle, PH
> Coral Gables, Florida  33134
> (305) 476-7400
>
> By  /s/ Deborah J. Gander
>     Deborah J. Gander
>     Florida Bar No. 34363
>     Deborah@colson.com
>     Eservice@colson.com