2022 WL 1420869
Only the Westlaw citation is currently available.
United States Court of Appeals, Eleventh Circuit.

Mary BRADY, Plaintiff-Appellant,
v.
CARNIVAL CORPORATION, A Panamian Corporation,
d.b.a. Carnival Cruise Lines, Defendant-Appellee.

No. 21-10772
|
Filed: 05/05/2022

**Synopsis**
**Background:** Passenger sued cruise line in admiralty for negligence, after she slipped on puddle of water and broke her hip shortly after boarding cruise ship. The United States District Court for the Southern District of Florida, No. 1:19-cv-22989-MGC, Marcia G. Cooke, J., 2020 WL 8836063, granted cruise line summary judgment and subsequently denied passenger's motion for reconsideration. Passenger appealed.

**Holdings:** The Court of Appeals, Newsom, Circuit Judge, held that:

[1] district court failed to follow precedent regarding notice of risk-creating condition, and

[2] fact disputes remained as to whether cruise line had notice of risk-creating condition.

Reversed and remanded.

**Procedural Posture(s):** On Appeal; Motion for Summary Judgment.

West Headnotes (13)

**[1]** **Federal Courts** 🔑

Court of Appeals reviews a district court's grant of summary judgment de novo, considering the facts and drawing all reasonable inferences in the light most favorable to the non-moving party.

**[2]** **Federal Civil Procedure** 🔑

On a motion for summary judgment, the substantive law will identify which facts are material.

**[3]** **Federal Civil Procedure** 🔑

A "genuine dispute" exists, within the meaning of the summary judgment rule, if a jury applying the applicable evidentiary standard could reasonably find for either the plaintiff or the defendant as to the material fact. Fed. R. Civ. P. 56(a).

**[4]** **Admiralty** 🔑

Maritime law governs the liability of a cruise ship for a passenger's slip and fall.

**[5]** **Admiralty** 🔑

Although maritime law governs a slip-and-fall case against a cruise ship, that cousin of the common law draws heavily on general principles of negligence law.

**[6]** **Admiralty** 🔑

A passenger bringing a slip-and-fall case arising under admiralty law against a cruise line must make four showings in order to prevail: (1) the cruise line had a duty to protect her from a particular injury, (2) the cruise line breached that duty, (3) the breach actually and proximately caused her injury, and (4) she suffered actual harm.

**[7]** **Admiralty** 🔑

In a slip-and-fall case arising under admiralty law, a cruise line owes to a passenger a duty of ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier

have had actual or constructive notice of the risk-creating condition.

**[8]    Federal Courts** 🔑

Court of Appeals is bound by the prior-precedent rule to follow a prior published decision of the Court of Appeals; that is, even if the Court of Appeals disagrees with the decision, the court is required to be faithful to it.

**[9]    Admiralty** 🔑

District court's grant of summary judgment for cruise line, in passenger's slip-and-fall case in admiralty, upon determining that carrier lacked actual or constructive notice of risk-creating condition of presence of particular puddle on which passenger slipped on deck, failed to follow binding precedent providing that notice turned more broadly on whether carrier had notice that area where passenger fell had reasonable tendency to become wet and whether carrier had actual or constructive knowledge that pool deck where passenger fell could be slippery and therefore dangerous when wet.

**[10]    Federal Civil Procedure** 🔑

Genuine dispute of material fact remained as to whether cruise line had notice that area where passenger slipped and fell had reasonable tendency to become wet, thus precluding summary judgment in passenger's slip-and-fall case in admiralty against cruise line, after she slipped on puddle of water and broke her hip shortly after boarding cruise ship.

**[11]    Federal Civil Procedure** 🔑

At the summary judgment stage, a court must view all evidence and factual inferences in favor of the non-movant. Fed. R. Civ. P. 56(a).

**[12]    Federal Civil Procedure** 🔑

Genuine dispute of material fact remained as to whether cruise line had actual or constructive knowledge that pool deck where passenger fell could be slippery and therefore dangerous when wet, thus precluding summary judgment in passenger's slip-and-fall case in admiralty against cruise line, after she slipped on puddle of water and broke her hip shortly after boarding cruise ship.

**[13]    Admiralty** 🔑

Evidence that a ship owner has taken corrective action can establish notice of a dangerous or defective condition.

Appeal from the United States District Court for the Southern District of Florida, D.C. Docket No. 1:19-cv-22989-MGC

**Attorneys and Law Firms**

Douglas F. Eaton, Eaton & Wolk, PL, Miami, FL, Mark D. Press, Mark David Press, PA, Hollywood, FL, for Plaintiff-Appellant.

Catherine J. MacIvor, Noah D. Silverman, Foreman Friedman, PA, Miami, FL, Brasilia Echevarria, Coral Gables, FL, Donnise DeSouza Webb, Carnival Corporation, Doral, FL, for Defendant-Appellee.

Before Newsom, Marcus, Circuit Judges, and Lawson,[*] District Judge.

**Opinion**

Newsom, Circuit Judge:

 **\*1**  This is a slip-and-fall case arising under admiralty law. In a nutshell, Mary Brady slipped on a puddle of water and broke her hip shortly after boarding a Carnival cruise ship. She then sued the cruise line for negligence. The district court granted summary judgment for Carnival, holding that it lacked a duty to protect Brady because its crewmembers had neither actual nor constructive notice of the particular puddle that caused her fall. For the following reasons, we reverse and remand for further proceedings consistent with this opinion.

## I

The facts, taken in the light most favorable to Brady, as the summary-judgment loser, are as follows: On the afternoon of August 18, 2018, the weather was hot and dry in Cape Canaveral, Florida. Brady boarded the Carnival "Sunshine" for a cruise vacation with her family and friends. She immediately proceeded to the ship's Lido Deck to meet other members of her party and grab some lunch. The scene was what one would expect at the beginning of a cruise: The sun was shining, music was playing, and it was "really crowded" on the deck because the passengers weren't yet allowed in their cabins.

After a few minutes, Brady found the group she was searching for and began walking toward them. Brady was looking straight ahead at her friend, Jessica Chasen, and didn't see a patch of colorless liquid on the deck. Brady stepped in the puddle and her foot came out from under her. She "went flying up in the air" and landed "really hard on [her] back," with her "feet [coming] down afterwards." The impact fractured Brady's hip, and the injury would require Brady to leave the ship and undergo hip-replacement surgery.

Although Carnival claimed—in both an interrogatory answer and a casualty report submitted to the Bahamas Maritime Authority—that there was a caution sign in place, Brady said there weren't any warning signs in the immediate vicinity of her fall. There appears to be some truth to both positions, as a photo that Carnival took of the scene depicts a caution sign on the Lido Deck some 20 feet away from the puddle on which Brady slipped.

Brady sued Carnival in admiralty for negligence. Following discovery, the district court granted Carnival's motion for summary judgment on the basis that Brady failed to show that Carnival had knowledge of the particular puddle that caused Brady's fall. After the court denied Brady's Rule 59 motion for reconsideration, she timely appealed.

## II

 **[1]** **[2]** **[3]** "We review a district court's grant of summary judgment *de novo*, considering the facts and drawing all reasonable inferences in the light most favorable to the non-moving party." *Melton v. Abston*, 841 F.3d 1207, 1219

(11th Cir. 2016) (per curiam). Summary judgment is proper if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). And a "genuine" dispute exists if "a jury applying [the applicable] evidentiary standard could reasonably find for either the plaintiff or the defendant" as to the material fact. *Id.* at 255, 106 S.Ct. 2505.

## III

 **\*2** **[4]** **[5]** **[6]** Maritime law governs the liability of a cruise ship for a passenger's slip and fall. *Everett v. Carnival Cruise Lines*, 912 F.2d 1355, 1358 (11th Cir. 1990). That cousin of the common law, however, draws heavily "on general principles of negligence law." *Carroll v. Carnival Corp.*, 955 F.3d 1260, 1264 (11th Cir. 2020) (quotation omitted). Consistent with those principles, Brady must make four showings in order to prevail: "(1) Carnival had a duty to protect her from a particular injury; (2) Carnival breached that duty; (3) the breach actually and proximately caused her injury; and (4) she suffered actual harm." *Id.*

 **[7]** This appeal implicates only the first element. As to that one, Carnival owed Brady "a duty of 'ordinary reasonable care under the circumstances, a standard which requires, as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition.' " *K.T. v. Royal Caribbean Cruises, Ltd.*, 931 F.3d 1041, 1044 (11th Cir. 2019) (quoting *Keefe v. Bahama Cruise Line, Inc.*, 867 F.2d 1318, 1322 (11th Cir. 1989) (per curiam)).

### A

At the outset, we clarify what, under our precedent, the relevant "risk-creating condition" was here. It was not, as the district court suggested, the presence of the particular "puddle on which [Brady] slipped." Order at 3. Rather, the salient issue is whether Carnival knew, more generally, that the area of the deck where Brady fell had a reasonable tendency to become slippery—and thus dangerous to passengers—due to wetness from the pool.

This much is dictated by our decision in 🚩*Carroll*. There, the plaintiff was crossing Deck 11 of another Carnival cruise ship. *See* 🚩955 F.3d at 1262–63. "While Mrs. Carroll was walking behind her husband, her right foot clipped the leg of one of the lounge chairs" on the deck, "causing her to fall and suffer injuries." 🚩*Id.* at 1263. There was no evidence— at least none cited by the court or the parties—that Carnival was aware that the *specific* chair that caused Carroll's fall was protruding into the walkway. Yet in reversing on the issue of notice, this Court relied on more general "evidence reflecting that Carnival took corrective measures to prevent people from tripping over *the lounge chairs in the walkway on Deck 11*." 🚩*Id.* at 1265 (emphasis added). For instance, "one of Carnival's pool deck supervisors ... testified that the lounge chairs on Deck 11 were supposed to be arranged in the upright position, and he was instructed (and trained other employees that he supervised) to make sure that the chairs were not protruding into or blocking the walkway." 🚩*Id.* at 1266. Another employee "testified that part of her duties included patrolling Deck 11 and moving any lounge chairs that were blocking the walkway." 🚩*Id.* And a third "testified that because passengers sometimes pull out chairs and do not put them back in place, they can create an 'unsafe condition,' so it is part of the staff's duties to take corrective action and remove that hazard." 🚩*Id.* Because this testimony showed that Carnival had "taken corrective measures"—repositioning the lounge chairs on Deck 11 to maintain a clear walkway —we held that the protruding chair that injured Carroll was a "known danger." 🚩*Id.* This was "enough to withstand summary judgment on the issue of Carnival's notice," despite a lack of evidence that Carnival knew that the specific injury-causing chair was jutting out into the walkway. 🚩*Id.*

 **[8]** 🚩*Carroll* is a published decision, and "we are bound by the prior-precedent rule to follow" it. 🚩*Arias v. Cameron, 776 F.3d 1262, 1275 (11th Cir. 2015).* That is, "even if we disagree[ ] with [🚩*Carroll*]," we are "required to be faithful to it." 🚩*Id.*

 **\*3 [9]** Here, the district court failed to faithfully follow 🚩*Carroll.* [1] The court ruled for Carnival because "[t]here is no evidence in the record that any Carnival crewmember was

notified or was otherwise aware of the existence of *the puddle on which [Brady] slipped*." Order at 3 (emphasis added); *see also id.* at 5 ("There is no evidence Carnival knew of the existence of this puddle of water."); *id.* at 6 (focusing on "whether Carnival had constructive notice of the puddle on the deck"). While that may be true, it misses the relevant question. Under 🚩*Carroll*, the issue of notice turns more broadly on (1) whether Carnival had notice that the area where Brady fell had a reasonable tendency to become wet, *see* 🚩*Carroll*, 955 F.3d at 1266, and (2) whether it "had actual or constructive knowledge that the pool deck where [Brady] fell could be slippery (and therefore dangerous) when wet," 🚩*Sorrels v. NCL (Bahamas) Ltd.*, 796 F.3d 1275, 1288 (11th Cir. 2015).

**B**

Taking all reasonable inferences and construing the evidence in Brady's favor, we hold that a rational jury could find for her on both questions.

 **[10]** Start with whether Carnival knew that the deck area was reasonably likely to become wet. Carnival's representative, Maurice Vega, admitted in an interrogatory that "the mid ship open Lido Deck area"—*i.e.*, where Brady fell—"is reasonably expected to become wet due to ... passengers' use of the swimming pool." The interrogatory continued on to note that, nevertheless, "yellow caution cones were in place." Such a warning sign is visible in the background of one of the photos, about 20 feet from the location of Brady's fall. And Chasen overheard a crewmember provide a statement that there were "safety cones on the deck" in the vicinity "where [Brady] fell." The cruise line's casualty report similarly claims that a "caution sign was in place." A rational factfinder could conclude from this evidence that a warning sign was indeed in place on the pool deck—or was meant to be— near the location of the incident. So too, a rational factfinder could draw the inference from Carnival's admissions and its placement of a warning sign near its pool that it knew that the area would frequently become wet from its passengers' normal use of the pool. *See* 🚩*Carroll*, 955 F.3d at 1266.

 **[11]** In response, Carnival insists that Vega "clarified" at his deposition that the warning signs weren't related to wetness on the deck, but rather, were "placed as a general reminder to passengers to be careful." Br. of Appellee at 29. That is

one view of the evidence. "At the summary judgment stage, however, we must view all evidence and factual inferences in favor of [Brady]." *Guevara v. NCL (Bahamas) Ltd.*, 920 F.3d 710, 722 (11th Cir. 2019). When read in the light most favorable to her, both Carnival's interrogatory response and its casualty report link the placement of the caution sign to the expectation of wet conditions on the pool deck. To elevate Vega's deposition testimony over these documentary sources would be to invade the jury's province as the finder of fact. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge[.]"). Particularly when Carnival's admissions are viewed alongside the sign's proximity to the pool, a reasonable jury could find a "connection between the warning and the danger." *Guevara*, 920 F.3d at 721; *see Amy v. Carnival Corp.*, 961 F.3d 1303, 1309 (11th Cir. 2020).

**\*4** **[12]** **[13]** That leaves the question whether Carnival "had actual or constructive knowledge that the pool deck where [Brady] fell could be *slippery* (and therefore dangerous) when wet." *Sorrels*, 796 F.3d at 1288 (emphasis added). As we've explained before, "[e]vidence that a ship owner has taken corrective action can establish notice of a dangerous or defective condition." *Carroll*, 955 F.3d at 1265. And that's just what we have here. The fact that warning signs were "posted on the pool deck" in the general area of Brady's fall, when "viewed in the light most favorable to [Brady], is enough to withstand summary judgment as to notice." *Sorrels*, 796 F.3d at 1289. That's because a reasonable inference from the placement of the caution sign is that Carnival knew that the Lido Deck would become slippery when wet. *See id.* at 1288 (permitting this inference where a crewmember "would sometimes post warning signs on the pool deck after it had rained" and "had been told to post warning signs in the restaurant whenever there was water or some other liquid on the floor ... because it was known to her supervisors that the teak floor could be slippery when wet"); *Mabrey v. Carnival Cruise Lines, Inc.*, 438 So. 2d 937, 938 (Fla. Dist. Ct. App. 1983) (holding

that evidence of a "Slippery When Wet" sign at the entrance to a deck of the cruise ship precluded a directed verdict). In other words, a jury could reasonably find that placing a warning sign on the deck served as Carnival's acknowledgment of the danger. Even the district court seems to have accepted this inference. It just erred (for reasons already explained) in its framing of the relevant hazard.

At the same time, it doesn't matter that the caution sign wasn't placed exactly where Brady fell. The deck in both locations —which are fairly close to one another—is made of the same material. So, if a jury believes that the sign indicates that Carnival had notice that the deck would become slippery when wet, then it could reasonably infer that Carnival knew that the area where Brady slipped would pose that same hazard.

"To be clear, a reasonable jury also could see other evidence to indicate that Carnival lacked notice." *Amy*, 961 F.3d at 1310. For example, one interrogatory response from Carnival claims that the "deck material" is "appropriate for the mid ship open Lido Deck area." But weighing this conflicting evidence is a "task ... for the jury." *Id.* Based on Carnival's repeated admissions that warning signs were present in the area, we hold that there is a genuine issue of material fact as to Carnival's notice. *See id.* at 1309; *Carroll*, 955 F.3d at 1266; *Sorrels*, 796 F.3d at 1289; *Mabrey*, 438 So. 2d at 938. Accordingly, the district court's grant of summary judgment on the basis that Carnival lacked notice was improper. [2]

* * *

We **REVERSE** and **REMAND** for the district court to address, in the first instance, Carnival's alternative argument with respect to the alleged open-and-obvious nature of the hazard.

**All Citations**

--- F.4th ----, 2022 WL 1420869

**Footnotes**

**Brady v. Carnival Corporation, --- F.4th ---- (2022)**

---

\*        Honorable Hugh Lawson, United States District Judge for the Middle District of Georgia, sitting by designation.

1        In fairness to the district court, neither side cited 🚩*Carroll* in their summary judgment briefs. But the fact that the parties have failed to identify a binding decision doesn't make it any less binding. Between the closing of briefing and oral argument in this Court, we sought and received supplemental briefing on 🚩*Carroll*'s application.

2        In so holding, we don't foreclose the possibility of Carnival "showing that it did not *breach* its duty to warn because" the alleged "sign provided passengers with a sufficient warning about the dangerous condition in the area." 🚩*Guevara*, 920 F.3d at 722 (emphasis added). The issue of breach, however, isn't before us.

---

**End of Document**        © 2022 Thomson Reuters. No claim to original U.S. Government Works.