UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:20-cv-23463-MGC

MARIA PEREZ-SERA,

    Plaintiff,

v.

CARNIVAL CORPORATION, a Panamian
Corporation, the owner and operator of the
Trademark CARNIVAL CRUISE LINE.

    Defendant.
_____/

## **DECLARATION OF MICHAEL J. DRAHOS, ESQ.**

1. My name is Michael J. Drahos, Esq. I am an attorney with the law firm GrayRobinson, P.A. and lead counsel for Defendant, Carnival Corporation, in this matter.

2. I am over the age of eighteen (18) and competent to provide this declaration.

3. On June 13, 2022 the Court entered an Order requiring Defendant to provide additional information in order to generate a more-complete factual understanding of the circumstances surrounding video surveillance viewed by an onboard security officer shortly after the subject incident that has since become unavailable due to technical problems concerning an external hard drive that stored the footage on the cruise ship. [DE 70] The following is intended to answer the questions posed by the Court in the recent June 13, 2022 Order [Id.]. The Court's questions are in italics and the verified responses are in bold.

4. *When did anyone at Carnival (including ship-based employees) first learn that the hard drive could not be accessed?*

On March 14, 2020, *Horizon* Assistant Chief Security Officer Mayank Thapa attempted to open the subject hard drive and discovered that it was not working. [See Ex. A]

5. *When did anyone at Carnival shoreside (as opposed to someone aboard the ship) first learn that the hard drive could not be accessed?*

*Horizon* Chief Security Officer Rajesh Nalawade informed Carnival employees Yerandys Martell-Carrasco and Monica Borcegue that the subject hard drive was not working on March 15, 2020. Mr. Martell-Carrasco is the Senior Manager of Security Services at Carnival. Ms. Borcegue serves as a Litigation Representative at Carnival assisting inside and outside counsel with discovery requests. [1]

6. *When did a shoreside IT expert for Carnival first learn that the video could not be accessed?*

After a comprehensive inquiry to each member of Carnival's existing IT Department, neither a specific person nor date could be identified. Notably, there were members of Carnival's IT Department who were furloughed and/or laid off over the course of the sixteen (16) month time period that the company was not sailing during the Covid-19 pandemic who have not subsequently returned. Therefore, it is possible that the initial notice to Carnival's shoreside IT Department was received by an ex-employee prior to their departure from the company. Alternatively, Carnival also outsources IT service to a remote vendor in India via

---

[1] It bears noting that the World Health Organization first declared Covid-19 a pandemic on March 11, 2020 and President Donald J. Trump followed by declaring Covid-19 a National Emergency two days later on March 13. Working closely with the United States Government and the Centers for Disease Control (CDC), all of the primary companies in the cruise ship industry paused operations on March 13 as well. Thus, Carnival's shoreside headquarters was closed, litigation was essentially paused, and the entire cruise industry was entering the initial stages of what would ultimately become a sixteen (16) month halt in operations at the time the issue with the subject hard drive was first discovered.

**a HELP line, and it is also possible that the initial inquiry may have been routed to their attention.**

7.  *When did any non-IT expert from Carnival shoreside first learn that the hard drive could not be accessed?*

**See Response to No. 5 above.**

8.  *When did anyone associated with Carnival's legal team (either internally or through outside counsel) first learn that the hard drive could not be accessed? [This includes attorneys, paralegals, legal representatives, claims representatives, litigation consultants, etc.]*

**See Response to No. 5 above.**

9.  *When was anyone involved with Carnival's discovery obligations in this case first reminded that the hard drive could not be accessed?*

**On January 26, 2021 Ms. Borcegue was in the process of obtaining various document/information requests that the undersigned had sought her assistance with in preparing responses to Plaintiff's initial discovery. To that end, Ms. Borcegue contacted the acting *Horizon* Chief Security Officer, Rawan Sawan,[2] and requested that he forward a copy of any CCTV footage for the incident. Mr. Sawan advised that he checked the ship's security files and computers looking for the CCTV footage to no avail. Mr. Sawan also advised that the hard drive used to store the CCTV videos had become non-operational back in March of 2020, but he would have the ship's IT officer check the device and advise if any information could be obtained. [Id.][3]**

---

[2] Mr. Sawan was not on the *Horizon* at the time of the incident in question and had no involvement in the initial investigation.

[3] Notably, due to the ongoing disruption in business operations, Carnival's shoreside headquarters were still closed to non-essential personnel at this time and the cruise line had yet to launch a single vessel back into service. In fact, a Carnival vessel would not sail from a United States port for another five (5) months until the *Vista* launched from Galveston, Texas on July 3, 2021. The *Horizon* followed next on July 4th on Miami, making it only the second ship in the entire fleet to resume U.S. operations at the time.

10. *When did Carnival first advise Plaintiff that there had been video surveillance but that technical problems with the hard drive prevented the video from being accessed?*

**On October 26, 2021 Arvind Lagas, (the *Horizon* Security Officer who conducted the subject incident investigation) testified that he preserved the video directly onto the subject hard drive during his accident investigation in accordance with Carnival's protocol for accident investigations. The undersigned was out of the country defending a deposition in another matter at the time, but subsequently learned of the testimony and began contacting Carnival representatives upon returning to the United States between October 28 and October 29 for clarity on the issue. On October 30th, the undersigned notified counsel for the Plaintiff during a discussion after the deposition of ship physician Dr. Claudia Gonzalez-Chagrin that the hard drive Mr. Lagas testified he used to store the subject CCTV footage was not working and thus the information saved on it was not accessible. Plaintiff amended her Notice of Hearing accordingly and the matter was presented to the Court for discussion on November 1st. [See DE 30, 31]**

11. *When did Carnival or its counsel first send the hard drive to any outside vendor IT expert in an effort to retrieve the video surveillance?*

**January 24, 2022. Subsequent to Arvind Lagas' October 26th testimony, the undersigned's office contacted various members of the *Horizon's* IT Department and Ship Security Department to clarify how the CCTV videos had been preserved aboard the vessel during the subject time period, and to learn more about the nature of the hard drive malfunction. During the investigation, a crew member advised that the subject hard drive was still on the vessel. As a result, attorney Cooper Jarnagin, Esq. boarded the *Horizon* during its scheduled arrival to the Port of Miami on December 6, 2021 and personally**

received the subject hard drive from the ship's security staff. Mr. Jarnagin then delivered the hard drive directly to Ms. Borcegue at Carnival's headquarters in Doral for the company's IT Department to examine. After Carnival's shoreside IT Department confirmed that the hard drive was indeed inaccessible, the undersigned retained DataLab Recovery[4] to perform a more intense forensic analysis and forwarded the drive to them on January 24th.

12. *When did DataLab Recovery first conduct an examination of the hard drive?*

DataLab Recovery's forensic analysis began on January 25, 2022.

13. *When did DataLab Recovery first conclude that the hard drive could not be restored and that the video could not be retrieved?*

February 22, 2022.

14. *When did DataLab Recovery last make an effort to restore the hard drive and/or retrieve the specific video surveillance?*

February 22, 2022.

15. *Does DataLab Recovery plan to undertake any additional efforts to restore the hard drive or retrieve the specific video, and, if so, what steps are contemplated and when are they anticipated?*

After initial attempts failed, DataLab suggested replacing a particular part of the hard drive, which could potentially enable their technician to rebuild and re-activate the device. Carnival purchased the part on February 3rd, but a delay ensued as DataLab was awaiting delivery of the part from the manufacturer. On the morning of February 21, the undersigned was advised by DataLab's president that his engineers had installed the new part and were currently completing a "meticulous cleaning process" in a final attempt to

---

[4] http://www.datalabrecovery.com

access information on the hard drive, but he was not optimistic. DataLab ultimately advised later that afternoon that its engineers exhausted every available option but were ultimately unable to retrieve any information from the hard drive.

16. *Does Carnival plan to forward the hard drive to any other vendor, and, if so, which one, and when?*

Not at this time. In an abundance of caution, Carnival retained SERT Data Recovery[5] to analyze the drive and provide a second opinion. SERT Data Recovery also attempted to rebuild the hard drive and conduct their own independent forensic analysis but likewise advised that the information is irretrievable.

17. *Why did Carnival choose to simply say, in a vague, detail-free way, that it had no video—a response which some might deem to be intentionally misleading?*

The subject inquiry came by way of a Request for Production, which the undersigned contends was answered accurately as Carnival did not then, and currently does not now, have possession of a video that it can produce to the Plaintiff. Nevertheless, the undersigned is very mindful of the Court's concerns, and respectfully denies any suggestion that there was an intent to be misleading in Carnival's Response to Plaintiff's Request for Production No. 2.

The undersigned has served as Carnival's private outside counsel in the Southern District of Florida for over eighteen (18) years with an immaculate record; has appeared before this Court on numerous other matters with the utmost respect; has enjoyed an amicable professional working relationship with the Colson Hicks law firm on this and other cases; has maintained an AV Preeminent Rating on Martindale Hubbell (5.0 out of 5.0) for

---

[5] http://www.sertdatarecovery.com

nearly ten (10) years; serves as a Director at the GrayRobinson law firm, and is a member of the Federation of Defense and Corporate Counsel. The undersigned would <u>never</u> risk his reputation and standing with any of the aforementioned parties by issuing an intentionally misleading discovery response regarding a surveillance video in a personal injury lawsuit.

At the time the initial inquiry was made to Ms. Borcegue for the subject information, the undersigned was focused on numerous pending discovery requests involving multiple client contacts and resources that were trickling in periodically during a very challenging time period for the company, its employees, and outside counsel (particularly as it relates to information requests). The *Horizon* was not sailing at the time and was operating with only a skeleton crew. The subject Security Officer who completed the investigation was also not aboard the vessel. Carnival's shoreside employees (including Ms. Borcegue) were all working from home with limited resources. Upon learning that the acting Security Supervisor aboard the *Horizon* had checked the ship computers for the CCTV footage to no avail, it was interpreted by the undersigned to mean that there was no footage preserved. The undersigned's erroneous understanding of the hard drive at the time was that it served as a backup to the files stored on the computer. The undersigned did not appreciate that the subject hard drive was the sole exclusive means upon which the ship's security staff had been preserving/storing CCTV footage. Thus, the undersigned provided the information Carnival had in its possession in Response to Request for Production No. 2 and moved on to addressing the thirty (30) other pending discovery requests.

As discovery in this case advanced, the undersigned never gave another thought to Carnival's Response to Request for Production No. 2. Indeed the majority of the attention in this case was focused on the medical negligence claim, which the undersigned specializes

in and worked diligently toward positioning for summary judgment. Plaintiff's claim that another passenger hit her from behind with a scooter was never disputed by Carnival at any phase in the litigation. There was minimal discovery focusing on Carnival's purported actual or constructive notice of any dangerous condition arising from scooters, no liability experts were disclosed to provide accident reconstruction opinions or analysis, and even the depositions of the subject security crew members did not take place until nearly (9) months after Carnival provided its Response to Request for Production No. 2-literally days before fact discovery was scheduled to expire. Upon learning that the subject hard drive Mr. Lagas used to preserve the CCTV footage was still on the *Horizon*, the undersigned's office immediately investigated the issue, obtained the device as soon as possible, and ultimately hired two separate outside forensic experts to exhaust every available option to try and retrieve the information to no avail.

PURSUANT TO 28 U.S.C. § 1746, I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT. EXECUTED ON JUNE 27, 2022 IN FORT LAUDERDALE, FLORIDA.

_____
MICHAEL J. DRAHOS, ESQ.

| | |
|---|---|
| **Sent:** | Sunday, March 15, 2020 12:00 PM |
| **To:** | HORIZON CHIEF SECURITY |
| **Cc:** | Martell-Carrasco, Yerandys (CCL); Borcegue, Monica (CCL); HORIZON STAFF CAPTAIN; HORIZON ASSISTANT CHIEF SECURITY OFFICER; Distlist Security Services MOD (Manager on Duty); Vazquez, Suzanne (CCL) |
| **Subject:** | Re: Carnival Horizon Seagate portable hard drive not working. |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Good morning all,

This is not good. We need to create redundancy and have back ups. I know each ship is receiving a designated external hard drive for BTW and CCTV but we need further discussion on a solution (uploading to the cloud) to preserve video potentially used as evidence in litigation. Thanks

Sent from my iPhone

On Mar 15, 2020, at 9:38 AM, HORIZON CHIEF SECURITY <HZCHSEC@carnival.com> wrote:

Good Morning Martell & Monica,

Please be informed that Seagate portable hard drive 2TB (S/N NA9CSYFR) that had all the CCTV evidence footage and BWC evidence videos from the time of Horizon came in operation, now not working and unable to access the data. Onboard IT Officer already checked the said hard drive but it remained futile. See below email from Asst Chief Security Officer for details.

Kindly advise.

Thank you and kind regards,

**Rajesh Nalawade**
**Chief Security Officer, Carnival Horizon**
Carnival Cruise Line
Office: 7718 | Ext. 32019 | email: hzchsec@carnival.com

**CHOOSE FUN®**

**From:** HORIZON ASSISTANT CHIEF SECURITY OFFICER
**Sent:** Saturday, March 14, 2020 9:46 PM
**To:** HORIZON CHIEF SECURITY
**Cc:** HORIZON ASSISTANT CHIEF SECURITY OFFICER
**Subject:** Seagate portable hard drive not working

Good Morning Chief,

Exhibit A

Our Seagate Backup Plus Portable Drive 2TB (S/N NA9CSYFR) that had all the CCTV and some BWC videos from the time Horizon came, can no longer be detected when plugged in.
The IT officer also had a look and informed that the hard drive has become unusable and data cannot be retrieved as it is cannot be detected anymore.

Thanks and Kind Regards,

## MAYANK THAPA

Asst. Chief Security Officer | Carnival Horizon
Carnival Cruise Line
3655 NW 87th Avenue Miami, FL 33178
Cell Phone: 32020 | Office 7716

**CHOOSE FUN®**

2

Exhibit A